UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHAUN FARRELL,

     **Plaintiff,**

v.                                  **Case No. 3:18-cv-01490-J-20JRK**

AARON'S, INC.,

     **Defendant.**

_____/

## O R D E R

Before this Court is Defendant Aaron's Inc.'s ("Aaron's") "Motion to Dismiss or, Alternatively, to Stay this Action and Compel Arbitration and Brief in Support" (Doc. 5), Plaintiff's response in opposition thereto (Doc. 10), and Aaron's reply brief in support of its Motion (Doc. 15).

Aaron's manufactures, sells, and leases furniture, sells and leases appliances and electronics, and operates a network of retail stores. Plaintiff began working for Aaron's in 2008, rising through the ranks of the company to become a Regional Manager in 2014.[1] His employment with Aaron's ended on September 17, 2018.

In his above-captioned suit, Plaintiff alleges that Aaron's violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* by depriving him of his overtime wages (Doc. 3; Count I); and retaliated against him for reporting the sexual harassment of a co-worker in violation of Florida Whistleblower Act, § 448.102(3) Fla. Stat. (Doc. 3, Count II) and Title VII of the Civil Rights Act

---

[1] Plaintiff resigned his employment with Aaron's in September of 2009 but was rehired in February of 2010.

of 1964, 42 U.S.C. § 2000e-3(a) (Doc. 3, Count III). Plaintiff also seeks a declaratory judgment

that the "restrictive covenants in the Agreements [he signed] are, in equity, unenforceable or void

. . . ." (Doc. 3, Count IV).

In response to Plaintiff's Complaint (Doc. 3), Aaron's filed its' "Motion to Dismiss or

Alternatively, Stay this Action, and Compel Arbitration" (Doc. 5). Aaron's argues that Plaintiff

agreed to arbitrate the claims in his complaint by entering into a stand-alone arbitration agreement

("Agreement") with Aaron's, effective March 1, 2017 (Doc. 5, Exhibit A, pgs. 8-14). Relevant

portions of the Agreement read as follows:

> **Section 1: Duty to Arbitrate**
>
> By signing this Agreement, you and the Company each agree that
> all Claims between you and the Company will be exclusively
> decided by arbitration governed by the Federal Arbitration Act
> before one neutral arbitrator and not by a Court or Jury.
>
> **Section 4: Covered Claims**
> As used in this Agreement, "Claims" means all disputes between
> you and the Company, including but not limited to disputes arising
> out of or related to your application for employment, your
> employment by the Company, or your separation from employment
> with the Company (including any job-related post-separation
> disputes) and includes any such disputes with current or former
> owners, members, officers, managers, supervisors, associates, or
> agents of the Company whether acting in their official or individual
> capacity. The term "Claims" includes, but is not limited to, any
> claim arising under federal, state or local law, under a statute such
> as Title VII of the Civil Rights Act of 1964 (Title VII) . . . the Fair
> Labor Standards Act (FLSA) . . . to name a few, under a rule,
> regulation or the common law, including, but not limited to any
> wage and hour claim of discrimination, harassment, retaliation,
> defamation or wrongful discharge . . . The term "Claims" includes
> claims in equity; however, any party may seek interim equitable
> relief from a court of competent jurisdiction in order to maintain the
> status quo of any particular matter. This Agreement covers any
> Claims subject to arbitration which are brought on or after March 1,
> 2017, even if the alleged act or omission occurred prior to March 1,

2

2017. . . .

**This Agreement contains the entire agreement between you and the Company regarding arbitration, and it supersedes any prior representations or statements by any manager, Associate, or agent of the Company.** The terms of this Agreement control over any prior arbitration agreements you may have signed with the Company and any prior discussions you may have had with a Company representative about arbitration . . . .

**Section 5: Arbitrator's Authority**

**A court of competent jurisdiction, and not the Arbitrator, shall have exclusive authority to resolve any dispute retaliating to the interpretation, applicability, enforceability, or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable . . . .**

**This Agreement shall not be construed to deprive a party of a substantive right preserved by law. The Arbitrator is bound by the applicable law of the jurisdiction under which the dispute arises . . . .**

**Section 16: Alternative Jury Trial Waiver**

Should a court of competent jurisdiction void the application of this Agreement as to one or more covered Claims, or should both parties waive the application of the Agreement to one or more covered Claims, the parties agree to mutually waive their respective rights to a trial by jury in a court of competent jurisdiction in which an action is filed to resolve any such covered claims. **The parties understand and agree that by using arbitration to resolve Claims, they are giving up any right that they may have to a judge or jury trial.**

**Section 17: Right to Opt-Out**

**If you do not wish to be bound by this Agreement, you must opt out by notifying the Company in writing, using the Company's designated opt-out form. In order to opt out of the benefits of this Agreement, you must fully complete and submit the opt-out form within thirty (30) days of the date on which the Company published this Agreement to you electronically . . . .**

**To be effective, the opt-out form must be signed by you, dated,**

3

> **it must contain all of the requested information in legible print,
> and it must be postmarked and sent via traceable mail . . . or
> delivered via hand delivery within the Opt-Out Period . . . .**
>
> Should you choose to opt out of the Agreement, you acknowledge
> and agree that the Company is no longer bound by the terms of the
> Agreement and may elect to bring any covered Claims it has you in
> a court rather than in arbitration. In addition, should you choose to
> opt out of the Agreement, Aaron's, Inc. and you agree to mutually
> waive the right to trial by jury . . . . Should you timely opt out as
> provided in this paragraph, you will not be subject to any adverse
> employment action as a consequence of that decision and you may
> pursue available legal remedies without regard to this Agreement.
>
> **Section 18: Effect of Signing Agreement**
>
> If you do not timely opt out of the Agreement as provided in Section
> 17, above, you will be bound by its terms, even if you do not sign it.

(bold text in original)(Doc. 5, Exhibit 1-A, pgs. 8-12). Plaintiff signed the Agreement
electronically on March 31, 2017. (Doc. 5, Exhibit 1-B, pg. 14).[2] The Electronic Signature Page
provides,"[b]y providing my signature below[,] I acknowledge that I have read Arbitration
Agreement Eff. 03-01-2007 (DOC 0001011) and understand it in its entirety." *Id.* Plaintiff does
not dispute he signed the Agreement.

   Aaron's asserts that (1) the Agreement is a valid and enforceable contract; and (2) all of
Plaintiff's claims fall within the scope of the Agreement and should be sent to arbitration. Plaintiff
argues this Court should set aside the Agreement because it is void as a matter of public policy,
and/or as a product of duress and unconscionability. Specifically, Plaintiff alleges that Aarons
should be, "estopped from enforcing the Arbitration Agreement . . . due to unclean hands for
engaging in an ongoing pattern of retaliation and reprisal against Plaintiff for his reporting sexual

---

[2] The Electronic Signature Page indicates the Agreement was published February 28, 2017 and
signed by Plaintiff March 31, 2017. (Doc. 5, Exhibit B, pg. 14).

harassment and complaining about such ongoing retaliation." (Doc. 10, Exhibit A, pg. 4).

A motion to compel arbitration is generally treated as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Bell v. Atlantic Trucking Co.*, No. 3:09-cv-406-J-32MCR, 2009 WL 4730564, at *2 (M.D. Fla. Dec. 7, 2009). There are two types of these motions: one that mounts a facial attack, where the issue challenged is whether the plaintiff has alleged subject matter jurisdiction in the complaint; and one that mounts a factual attack, whereby "the existence of subject matter jurisdiction in fact, irrespective of the pleadings" is challenged. *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). Aaron's Motion to Compel Arbitration raises a factual attack; it points to an extrinsic document, which could leave this Court without jurisdiction to adjudicate Plaintiff's claims. *Id.* at *3. Therefore, the Court may consider evidence outside of the four-corners of the complaint, i.e. the Agreement (Doc. 5, Exhibit 1-A, pgs. 8-14), the Declaration of Jill A Reinert (Doc. 5, Exhibit 1, pgs. 1-6), and the Declaration of Plaintiff (Doc. 10, pgs. 10-13). *Id.* at *2. No presumption of truthfulness attaches to Plaintiff's allegations. *Id.* at *3.[3]

The validity of arbitration agreements is generally governed by the Federal Arbitration

---

[3] The Eleventh Circuit has explained that a factual attack allows a trial court to proceed

> [A]s it never could under 12(b)(6) or Fed. R. Civ. P. 56 Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction . . . there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of a disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)(quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)).

Act ("FAA"), 9 U.S.C. § 1 *et. seq.* There is a liberal federal policy favoring arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985). "'[T]he preeminent concern of Congress in passing the Act was to enforce private agreements into which the parties had entered' a concern which 'requires that we rigorously enforce agreements to arbitrate.'" *Id.* (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). When in doubt, questions of arbitrability should be determined in favor of arbitration. *Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2009).

Arbitration is a matter of contract; therefore, arbitration agreements are enforced according to the terms contained therein. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "Section 2 of the Federal Arbitration Act (FAA) makes agreements to arbitrate, 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity of the revocation of any contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). Therefore, under the FAA, arbitration agreements, "are enforceable absent fraud, duress, or some other misconduct or wrongful act recognized by the law of contracts for revocation of a contract." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1371 (11th Cir. 2005). *See also Rent-A-Center*, 561 U.S. at 68 (holding that arbitration agreements, "[l]ike other contracts . . . may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'")(*quoting Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

While federal law establishes that arbitration agreements are enforceable, state law directs the interpretation and formation of arbitration agreements. *Emp'rs Ins. of Wausau*, 251 F.3d at 1322. The Eleventh Circuit has explained that when a Court determines whether there is a binding agreement to arbitrate, it should apply the contract law of the state that governs the formation of

contracts. However, the "'federal policy favoring arbitration . . . is taken into consideration even in applying ordinary state law.'" *Caley*, 428 F.3d at 1368 (quoting *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004)). Here, Plaintiff's claims arose in Florida, and the parties agree Florida law applies. In Florida, the party seeking to avoid arbitration has the burden of proving contract defenses. *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1158 (Fla. 2014).

## I.  Unconscionability

First, the Court will address Plaintiff's argument that the Agreement is unconscionable. "'Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Id.* at 1157 (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 339 (D.C. Cir. 1965)). To avoid arbitration, the challenging party must show the arbitration clause at issue is *both* procedurally *and* substantively unconscionable. *Id.* at 1159 ("All of the District Courts of Appeal in this state have previously recognized that, under Florida contracts law, both procedural and substantive unconscionability must be established as a defense to contract enforcement.")(citations omitted).

### a.  *Substantive Unconscionability*

Substantive unconscionability focuses on the terms of the arbitration agreement and evaluates whether the terms are "unreasonable and unfair." *Id.* at 1139 (citations omitted). A substantively unconscionable agreement is one in which "'no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Belcher v. Kier*, 558 So. 2d 1039, 1044 (Fla. 2d DCA 1990)(quoting *Hume v. United States*, 132 U.S. 406 (1889)). *See also Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1134 (11th Cir.

7

2010) (same). Stated otherwise, the substantive unconscionability analysis considers whether the actual terms of the contract are "so outrageously unfair as to shock the judicial conscience." *FL-Carrollwood Care, LLC v. Gordon*, 72 So. 3d 162, 165 (Fla. 2d DCA 2011) (citing *Bland ex rel. Coker v. Health Care & Ret. Corp. of Am.*, 927 So. 2d 252, 256 (Fla. 2d DCA 2006)). Factors to consider in assessing substantive unconscionability include whether the arbitration clause limits available remedies, including statutory remedies and damages; eliminates punitive damages, prevents equitable relief, and imposes substantial costs or lacks a mutual obligation regarding arbitration of disputes. *Henry v. Pizza Hut of Am., Inc.*, No. 6:07-cv-01128-Orl-DAB, 2007 WL 2827722, at *4 (M.D. Fla. Sept. 27, 2007).

Plaintiff argues that "[t]he Arbitration Agreement is . . . substantively unconscionable because it bars Plaintiff from his right to a jury trial (in particular, the right provided under the Fair Labor Standards Act) . . . ." (Doc. 10, pg. 6). Plaintiff then identifies Section 16 of the Agreement as being substantively unconscionable.

There is nothing substantively unconscionable in this provision signed by the parties. Agreeing to arbitrate obviously and necessarily affects the forum in which an employee exercises their statutory rights. However, Plaintiff is not waiving any statutory rights by agreeing to arbitrate. *Caley*, 428 F.3d at 1371. The Supreme Court has explained:

> By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality and expedition of arbitration.

*Mitsubishi Motors*, 473 U.S. at 628. Likewise, it is well settled that when a party enters into a valid arbitration agreement, the party is not entitled to a trial by jury for covered claims. *Caley,* 428 F.3d

8

at 1371-72.

> The Seventh Amendment does not confer the right to a trial, but only
> the right to have a jury hear the case *once it is determined that the
> litigation should proceed before a court.* If the claims are properly
> before an arbitral forum pursuant to an arbitration agreement, the
> jury trial right vanishes.

*Id.* at 1371 (emphasis in original)(quoting *American Heritage Life Ins. Co. v. Orr*, 294 F.3d 702,

711 (5th Cir. 2002)).[4] That the claims brought by plaintiff allege violations of federal law do not

change the analysis. It is not an unlawful employment practice to require an employee to submit

claims to arbitration arising from alleged violations of federal statutes, including Title VII and

FLSA. *Caley*, 428 F.3d at 1367 (citing *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1313-14 (11th

Cir. 2002)).[5] *See also Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 700 (11th Cir.

1992)(holding claims made by employees under Title VII, including sexual harassment, are subject

to arbitration under the FAA);[6] *Ryan v. LP Fort Myers, LLC*, No. 2:14-cv-231-FTM-38CM, 2014

---

[4] The Court need not reach the question of whether Plaintiff signed the jury trial waiver knowingly
and voluntarily. In *Caley*, the plaintiffs argued that that the jury trial waiver contained within the
arbitration agreement was subject to a heightened "knowing and voluntary" standard. The Eleventh
Circuit rejected the plaintiff's contention and concluded that the parties' agreement to arbitrate and
jury trial waiver were not subject to a heightened "knowing and voluntary standard." Rather, the
agreement and waiver were governed by contract principles. *Caley*, 428 F.3d at 1371. This remains
true "even where the covered claims include federal statutory claims generally involving a jury
trial right." *Id.* at 1372.

[5] In *Caley*, the Eleventh Circuit affirmed the district court's order compelling arbitration for an
FLSA claim.

[6]The Eleventh Circuit has held firing an employee for refusing to sign a compulsory arbitration
agreement applicable to charges pending before the Equal Employment Opportunity Commission
for discrimination would not be a nonretaliatory reason supporting plaintiff's discharge under the
framework of the Title VII analysis. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261 (11th
Cir. 2008). In *Goldsmith*, the plaintiff was terminated when he refused to sign an arbitration
agreement that would have covered a pending EEOC charge. Plaintiff had, however, offered to
sign such an agreement regarding any future claims. In such a circumstance, the Eleventh Circuit

WL 3341306, at *2 (M.D. Fla. July 8, 2014)(collecting cases)("[O]vertime compensation claims brought pursuant to the FLSA can be arbitrated."). There are no terms contained in the Agreement that shock the judicial conscience. Plaintiff has failed to meet his burden of showing substantive unconscionability.

However, so concluding does not end the analysis. Substantive and procedural unconscionability often operate interdependently; thus, the Florida Supreme Court has instructed that both substantive and procedural unconscionability should be evaluated by Courts engaged in the unconscionability analysis. *Basulto*, 141 So.3d 1145.[7]

### b. *Procedural Unconscionability*

Procedural unconscionability concerns how the contract was entered. In determining whether an agreement is procedurally unconscionable, courts consider a myriad of factors, including the relative bargaining power of the parties, whether the complainant had a meaningful

---

held that there was enough evidence for a reasonable jury to find a "causal relation between the filing of [the plaintiff's] charge of discrimination and his termination." *Id.* at 1268. A motion to compel arbitration was not before the Court in *Goldsmith*. Rather the Eleventh Circuit was evaluating a grant of summary judgment in favor of an employer where it was undisputed that plaintiff's employment was terminated based on his refusal to sign an arbitration agreement. The facts and circumstances of *Goldsmith* are significantly different from those before this Court.

[7]In *Basulto*, the Florida Supreme Courts rejected the common approach of assessing procedural and substantive elements independently and concluding the analysis if either element is missing. 141 So. 3d at 1159-60. The Court explained:

> Given that the doctrine of unconscionability is not a rigid construct where the procedural aspects are separate from the substantive aspects, we conclude that both the procedural and substantive aspects of unconscionability must be present, although not necessarily to the same degree, and both should be evaluated interdependently rather than as independent elements.

*Id.* at 1160-61.

choice at the time the contract was entered, whether the terms were presented on a "take-it-or-leave-it basis" and whether the complaining party had the ability and opportunity to understand the agreement. *Pendergast*, 592 F.3d at 1137.

Plaintiff argues the Agreement is procedurally unconscionable because he was subject to "illegal retaliatory conduct from 2015 until his separation from employment in 2018;" during which time the opt-out option was presented to him, and "he was told by his boss, unjustly, that he must immediately agree to [the Agreement] or be terminated." (Doc. 10, pg. 6). The Plaintiff argues that because he did not have a meaningful choice to enter the Agreement and was subject to an ongoing campaign of retaliation, he was under duress when he signed the Agreement. Plaintiff reasons that because he was under duress when he signed the Agreement, it was procedurally unconscionable. (Doc. 10, pg. 5).

To prove duress, a Plaintiff must show, "(1) that the relevant act was effected involuntarily and was not an exercise of free choice or will, and (2) that this condition of mind was caused by some improper and coercive conduct by the other side." *Evering v. Tampa Food and Hospitality*, No. 16-cv-1192-T-27TBM, 2016 WL 8943314, at *3 n.3 (M.D. Fla. Aug. 4, 2016)(quoting *AMS Staff Leasing, Inc. v. Taylor*, 158 So. 3d 682, 687 (Fla. 4th DCA 2015)). That the Plaintiff was allegedly told by his boss to sign the arbitration agreement or be terminated does not constitute duress under Florida law. *See AMS Staffing*, 158 So.3d at 687 ("The only evidence of a 'threat' in this case was the threat that the plaintiff's services were not needed if he did not sign the employment contract. This is insufficient to constitute duress."); *Jackson v. Home Team Pest Def., Inc.*, No. 6:13-cv-916-Orl-22TBS, 2013 WL 6051391, at *7 (M.D. Fla. Nov. 15, 2013) (holding that an arbitration agreement was not product of coercion or duress although the plaintiff, an

11

employee, claimed he lacked free will, because the only reason he signed the agreement was to avoid losing his job). Even if the Court accepts Plaintiff's allegations of retaliatory conduct by Aaron's as true, there is no evidence Plaintiff's signing of the Agreement was a product of anything besides the exercise of his free choice. Likewise, there is no evidence his acquiescence to the agreement was effected involuntarily. *Id.*

Even absent duress, an agreement to arbitrate may still be found procedurally unconscionable.[8] Notably, Plaintiff does not argue that the Agreement is misleading; nor is it misleading. The Agreement is a stand-alone document, five-pages long and not written in overly complex language, easy for a management-level employee like Plaintiff to understand.[9] The Agreement also highlights in bold font the most significant effects of the Agreement, such as: Plaintiff's giving up the right to judge or jury trial by agreeing to arbitrate (Doc. 5, Exhibit 1-A, pg. 12, Section 16); and the method in which Plaintiff must opt out if he does not wish to be bound by the terms of the agreement (*Id.*, pg. 12, Section 17).

Plaintiff does not argue he lacked the opportunity to read or review Agreement or that he signed it involuntarily. The Agreement provided a thirty-day period for Plaintiff to opt out. According to the Electronic Signature Page (Doc. 5, Exhibit 1-B, pg. 14), the Agreement was published to Plaintiff on February 28, 2017, and was signed March 31, 2017. *Id.*

Even if his boss told him "he must immediately agree" to sign the arbitration agreement

---

[8] Plaintiff seems to allege duress as evidence of procedural unconscionability. However, unconscionability and duress are distinct defenses to the enforcement of a contract. *Rent-A-Center*, 561 U.S. at 68.

[9] In 2014, Plaintiff was promoted to the position of Regional Manager, a position he held for the remainder of his employment at Aaron's (Doc. 5, Exhibit 1, pg. 4).

"or be terminated," directly contracting the opt-out provision, it does not establish procedural unconscionability. *See Caley*, 428 F.3d at 1367 (11th Cir. 2005)(noting arbitration agreements are common in an employment context, and it is not unlawful to require employees arbitrate rather than litigate rights brought under federal discrimination statutes and the FLSA); *Spurgeon v. Marriott Int'l, Inc.*, No. 16-24612-CIV-ALTONAGA/O'Sullivan, 2017 WL 896301, at *6 (S.D. Fla. March 7, 2017) (holding an arbitration agreement was not procedurally unconscionable when plaintiff, who was already an employee with defendant's company, was presented with a "take-it or leave it" arbitration agreement her job depended upon signing); *Jackson*, 2013 WL at *7 (noting if the plaintiff was an at-will employee, the defendant had a right to terminate plaintiff for any reason not prohibited by law; if the plaintiff was not an at-will employee, he had a choice of standing up for his rights by refusing to sign or signing the arbitration agreement).

The Court accepts, for purposes of the matter before the Court, Plaintiff's argument the that during the same time he was presented with the Agreement, he was subject to ongoing retaliation. In such a context, Plaintiff must have felt diminished and had unequal bargaining power in relation to Aaron's. However, as explained herein, a Court must consider a myriad of factors in assessing procedural unconscionability, and these allegations alone do not establish a finding of procedural unconscionability.

Furthermore, even if this Court were to find Plaintiff's allegations regarding retaliation amounted to procedural unconscionability,[10] his argument fails because Plaintiff has not met his burden of showing the Agreement was substantively unconscionable to any degree. *See Basulto*,

---

[10]However, arbitration agreements are routinely enforced where the underlying claim is retaliation.

141 So. 3d at 1159 (holding that even though procedural and substantive unconscionability need not be present to the same degree, *both elements must be present* to avoid enforcing the terms of an arbitration agreement)(emphasis added); *Sierra v. Isdell*, No. 6:09-cv-124-Orl-19KRS, 2009 WL 2179127, at *5 (M.D. Fla. July 21, 2009)("[T]he facts demonstrate no substantive unconscionability and only a slight degree of procedural unconscionability. Accordingly, the agreement is not unconscionable under Florida law."); *Henry v. Pizza Hut of Am., Inc.*, No. 6:07-cv-01128-Orl-DAB, 2007 WL 2827722, at *5 (M.D. Fla. Sept. 27, 2007) (holding that the arbitration agreement was not unconscionable, because even if all of Plaintiff's allegations regarding procedurally unconscionability were presumed true, he failed to show substantive unconscionability).

## II. **Contrary to Public Policy**

Plaintiff alternatively argues that the Arbitration Agreement is void as a matter of public policy (Doc. 10, pg. 4). In Florida, a violation of public policy, is a "generally applicable contract defense . . . for if an arbitration agreement violates public policy, no valid agreement exists." *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 464-65 (2011). Parties may contract around a statute. However, a "'a contractual provision that contravenes legislative intent in a way that is clearly injurious to the public good violates public policy and is thus unenforceable.'" *Hernandez v. Crespo*, 211 So. 3d 19, 24 (Fla. 2016) (quoting *Franks v. Bowers*, 116 So.3d 1240, 1247 (Fla. 2013)).

Plaintiff has not identified[11] which provisions of the Agreement violate the public policy of Florida. "When a contract 'is not prohibited under [a] constitutional or statutory provision, or

---

[11] Separate from that which was identified in his unconscionability argument.

14

prior judicial decision, it should not be struck down on the ground that it is contrary to public policy, except it be clearly injurious to the public good or contravene some established interest of society.'" *Johnson, Pope, Bokor, Ruppel & Burns, LLP v. Forier*, 67 So. 3d 315 (Fla 2d DCA 2011)(quoting *Bituminous Cas. Corp. v. Williams*, 154 Fla. 191 (1944)).

The Agreement does not limit the remedies available to Plaintiff. *Cf. Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 459 (2011) (holding, in part, that an arbitration agreement's limitation of remedies that "directly undermined specific statutory remedies created by the [Florida] Legislature" violate public policy and is unenforceable); *Paladino v. Avnet Computer Techs.*, 134 F.3d 1054 (11th Cir. 1998) (holding an arbitration clause unenforceable where it did not permit relief equal to the to the federal statutory remedies). Nor does the Agreement alter or limit the awards, fairness of, or shift the costs under the statutes in which the Plaintiff seeks to recover under. *Cf. Hernandez v. Crespo*, 211 So. 3d 19 (Fla. 2016) (holding an arbitration agreement which changed the cost, award and fairness incentives of the Florida Medical Malpractice Act was void as against public policy); *Anderson v. Taylor Morrison*, 223 So. 3d 1088, 1092 (Fla. 2d DCA 2017)(holding an arbitration agreement that limited a homeowner's warranty claims and prevented their assertion of a statutory claim against a homebuilder violated public policy and was unenforceable). The Agreement does not violate public policy.

Accordingly, it is hereby **ORDERED**:

1. Defendant's "Motion to Dismiss or, Alternatively, to Stay this Action and Compel Arbitration and Brief in Support" (Doc. 5) is **GRANTED**;

2. The Parties are ordered to submit to arbitration;

3. This case is **STAYED** pending arbitration;

15

4. This case is administratively closed while the parties are in arbitration. However, every **ninety (90) days**, Plaintiff shall file a notice updating this Court on the progress of the arbitration.

**DONE AND ENTERED** at Jacksonville, Florida, this _16th_ day of May, 2019.

HARVEY E. SCHLESINGER
UNITED STATES DISTRICT JUDGE

Copies to:
Richard Farrell Meyers, Esq.
Alisa P. Cleek, Esq.
Matthew Robert Rosenkoff, Esq.